## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF OKLAHOMA

LESLIE A. SULLIVAN, JR.,    )
    )
    Plaintiff,    )
    )
    v.    )    **Case No. CIV-17-65-SPS**
    )
COMMISSIONER of the Social    )
Security Administration,    )
    )
    Defendant.    )

## OPINION AND ORDER

The claimant Leslie A. Sullivan, Jr., requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). He appeals the Commissioner's decision and asserts the Administrative Law Judge ("ALJ") erred in determining he was not disabled. For the reasons set forth below, the Commissioner's decision is hereby REVERSED and the case is REMANDED to the ALJ for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the

national economy[.]" *Id.* § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). *See also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight."

---

[1] Step One requires the claimant to establish that he is not engaged in substantial gainful activity. Step Two requires the claimant to establish that he has a medically severe impairment (or combination of impairments) that significantly limits his ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or his impairment *is not* medically severe, disability benefits are denied. If he *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, he is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that he lacks the residual functional capacity ("RFC") to return to his past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given his age, education, work experience, and RFC. Disability benefits are denied if the claimant can return to any of his past relevant work or if his RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

*Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951).  *See also Casias*, 933 F.2d at 800-01.

### Claimant's Background

The claimant was born November 28, 1964, and was fifty years old at the time of the administrative hearing (Tr. 33, 194).  He complete high school while taking special education classes, and has worked as a derrick worker (Tr. 26, 235).  The claimant alleges that he has been unable to work since May 24, 2013, due to back pain, depression, blood pressure, and alcohol abuse (Tr. 234).

### Procedural History

On October 8, 2013, the claimant protectively applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85.  His applications were denied.  ALJ J. Dell Gordon conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated December 14, 2015 (Tr. 19-28).  The Appeals Council denied review, so the ALJ's written opinion became the Commissioner's final decision for purposes of this appeal.  *See* 20 C.F.R. §§ 404.981, 416.1481.

### Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation.  He found that the claimant had the residual functional capacity (RFC) to perform light work as defined in 20 C.F.R. §§ 404.1567(b), 416.967(b), but that he was limited to simple tasks with supervision, he could relate to supervisors on a superficial basis but could not relate to the

general public, and he could adapt to a work situation (Tr. 24). The ALJ concluded that, although the claimant could not return to his past relevant work, he was nevertheless not disabled because there was work he could perform in the regional and national economies, *e. g.*, laundry worker, bakery worker commercial, and mail sorter (Tr. 26-27).

## Review

The claimant alleges numerous errors at steps four and five, including arguments that the ALJ erred by: (i) failing to account for his inability to read, (ii) failing to account for the type of supervision needed, (iii) failing to account for worsening mental impairments, (iv) failing to account for his severe physical impairments in the RFC, and (v) improperly determining the jobs he can perform at step five. The Court finds the ALJ *did* fail to properly account for the claimant's severe physical impairments and his inability to read, and the decision of the Commissioner should therefore be reversed.

The ALJ determined that the claimant had the severe impairments of affective disorder, alcohol/substance addiction disorder, lumbar spondylosis, lumbar levoscoliosis, lumbar central canal and neural foraminal stenosis, and degenerative changes at L5-S1 and L4-L5 (Tr. 21). The medical evidence related to the claimant's physical impairments reveals that he received treatment for back pain and pain in the hips and pelvis at least as far back as 2011 (Tr. 350-352, 354-355, 371). He continued to have documented joint pain and joint tenderness of the lower back into 2014 and 2015 (Tr. 423, 428, 456). In July 2014, the claimant was again stated as having noted joint pain and joint tenderness of the lower back, at a time when it was noted that he was having problems with blood pressure and his heart, and that his mental problems had gotten worse (Tr. 470-471). In 2015, the

claimant began seeking further treatment for his back pain, noting that it was worse upon bending and coughing (Tr. 484). Although it was first assessed as sprain and strain (Tr. 485), the pain continued, an MRI was ordered, and the claimant was assessed with lumbar intervertebral disc disorder with myelopathy (Tr. 478-480). An August 24, 2015 MRI of the lumbar spine revealed lumbar spondylosis, levoscoliosis, varying degrees of central canal and neural foraminal stenosis, and degenerative endplate changes most prominent L5-S1 and to a less degree L4-L5 (Tr. 536).

State reviewing physicians concluded in 2014 that the claimant's physical impairments were nonsevere (Tr. 55-56, 93-95).

Additionally, the record reflects the following related to the claimant's literacy. At the administrative hearing, the claimant himself testified, when asked about results from his MRI, that he "can't read that good" (Tr. 41). His sister completed his Function Report for him, noting that he was unable to handle money because he cannot read and write, and that he did not follow written instructions well (Tr. 259-263). A friend indicated in a Third Party Function Report that he has a hard time reading (Tr. 277). At his mental consultative examination with Dana D. Foley, Ph.D., the claimant reported that he graduated high school but could not read or write, and that they had "just pushed him aside in high school" (Tr. 385).

In his written opinion, the ALJ summarized the claimant's hearing testimony and much of the evidence in the record. At step two, the ALJ noted the 2015 MRI in support of the severe physical impairments (Tr. 21). At step four, he found that the claimant was not credible, and noted a number of examinations where the "claimant had normal strength,

tone, and muscle mass"[2] (Tr. 25). There was no further discussion of the claimant's physical impairments or related medical records. The ALJ then discussed the evidence related to the claimant's mental impairments and substance addiction, and ultimately concluded that the claimant was not disabled (Tr. 26).

The Court finds that the ALJ failed to properly assess the evidence regarding the claimant's physical impairments. The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (*e. g.*, laboratory findings) and nonmedical evidence (*e. g.*, daily activities, observations)." Soc. Sec. Rul. 96-8p, 1996 WL 374184, at *7 (July 2, 1996). "When the ALJ has failed to comply with SSR 96-8p because he has not linked his RFC determination with specific evidence in the record, the court cannot adequately assess whether relevant evidence supports the ALJ's RFC determination." *Jagodzinski v. Colvin*, 2013 WL 4849101, at *2 (D. Kan. Sept. 11, 2013), *citing Brown v. Commissioner of the Social Security Administration*, 245 F. Supp. 2d 1175, 1187 (D. Kan. 2003). Here, the ALJ made no mention of any of the records related to the claimant's physical impairments at step four, other than the finding that the claimant repeatedly had "normal strength, tone, and muscle mass" (Tr. 25). He did not even reference, as he did at step two, the objective test results confirming the claimant's physical impairments, and completely failed to include any limitations related to it in the claimants' RFC. *See Timmons v. Barnhart*, 118 Fed. Appx.

---

[2] On some of the same dates that the claimant was noted to have normal strength, tone, and muscle mass, he was also positive for joint pain and joint tenderness in the lower back (Tr., *e. g.*, 433-434, 456-457).

349, 353 (10th Cir. 2004) (finding the ALJ should have "explained how a 'severe' impairment at step two became 'insignificant' at step five.") [unpublished opinion]; *see also Hamby v. Astrue*, 260 Fed. Appx. 108, 112 (10th Cir. 2008) ("In deciding Ms. Hamby's case, the ALJ concluded that she had many severe impairments at step two. He failed to consider the consequences of these impairments, however, in determining that Ms. Hamby had the RFC to perform a wide range of sedentary work.") [unpublished opinion]. Indeed, the ALJ appeared to focus solely on records with positive findings regarding the claimant's physical impairments in a deliberate attempt to pick and choose among the evidence in order to avoid finding the claimant disabled. *See Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004) (noting that the ALJ may not "pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence."), *citing Switzer v. Heckler*, 742 F.2d 382, 385-86 (7th Cir. 1984) ("Th[e] report is uncontradicted and the Secretary's attempt to use only the portions favorable to her position, while ignoring other parts, is improper.") [citations omitted]. This was error. Instead, the ALJ should have explained why the claimant's severe physical impairments did not call for corresponding limitations in the RFC. *See Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996) ("[I]n addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as the significantly probative evidence that he rejects."), *citing Vincent ex rel. Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir 1984).

Furthermore, the ALJ appeared to ignore the probative evidence in the record that the claimant could not read. Here, the ALJ found that the claimant had graduated high

school, but "the numerical grade level that you completed in school may not represent your actual educational abilities. These may be higher or lower. However, if there is no other evidence to contradict it, we will use your numerical grade level to determine your educational abilities." 20 C.F.R. § 416.964(b). Accordingly, the regulations *do allow* for that classification to be modified where, as here, there is evidence that the claimant's actual educational abilities contradict the completed grade level. Thus, on remand the ALJ should also carefully consider the evidence related to the claimant's literacy. *See Dollar v. Bowen*, 821 F.2d 530, 535 (10th Cir. 1987) ("The record establishes that Mr. Dollar, although able to sign his name, was functionally illiterate and able to manage only simple financial transactions that do not require reading or writing. A review of the record has revealed absolutely no evidence to the contrary. . . . As a matter of law, the application of grid rules based on his eighth grade education was in error. Thus, the record does not contain substantial evidence to support the ALJ's implicit finding that Mr. Dollar was literate.") [internal citations omitted].

Because the ALJ failed to properly conduct an analysis of the evidence and the claimant's RFC, the decision of the Commissioner should be reversed and the case remanded to the ALJ for further analysis. If such analysis results in any adjustments to the claimant's RFC, the ALJ should re-determine what work the claimant can perform, if any, and ultimately whether he is disabled.

## Conclusion

The Court hereby FINDS that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. The

decision of the Commissioner is accordingly REVERSED and the case is REMANDED for further proceedings consistent herewith.

**DATED** this 27th day of March, 2018.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**